IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 8, 2007

## BILLY RAY RILEY v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Madison County**
**No. C-06-061     Roger A. Page, Judge**

_____

### No. W2006-01520-CCA-R3-PC  - Filed July 12, 2007

_____

The petitioner, Billy Ray Riley, was convicted by a jury in the Madison County Circuit Court of theft of property valued more than $1000 but less than $10,000, and he was sentenced as a Range III, persistent offender to twelve years incarceration in the Tennessee Department of Correction. Subsequently, the petitioner filed a petition for post-conviction relief, alleging that his trial counsel was ineffective by not thoroughly reviewing his file with him, by not convincing him to testify at trial, and by having a conflict of interest regarding the case. The post-conviction court found that counsel was not ineffective and denied the petition. On appeal, the petitioner contests the post-conviction court's ruling. Upon our review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed**.

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and JERRY L. SMITH, J., joined.

J. Colin Morris, Jackson, Tennessee, for the appellant, Billy Ray Riley.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; James G. Woodall, District Attorney General; and James W. Thompson, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I.  Factual Background

The petitioner was charged with the theft of property valued over $1000 but less than $10,000. The proof at trial revealed that the victim, Harriet Elaine Newbern, lived in Jackson. Her twenty-five-year-old daughter suffered from diabetes and blindness and occasionally stayed in Maplewood Nursing Home to receive treatment for her diabetes. On January 13, 2003, Newbern held at her home a birthday party for her daughter. Farley Hardison and the petitioner came to the

party and told Newbern that they were traveling from Nashville to Memphis. Newbern knew Hardison but not the petitioner. Because Newbern could tell that the men had been drinking alcohol, she invited them to spend the night in her home.

After the party, Newbern, Hardison, and the petitioner drove Newbern's daughter to the nursing home. The following day, Newbern and the petitioner drove to the nursing home to pick up Newbern's daughter. Newbern allowed the petitioner to drive her vehicle to the nursing home, and she rode with him. Later that day, they drove Newbern's daughter back to the nursing home in the petitioner's vehicle. On January 15, Newbern had a doctor's appointment. The petitioner asked Newbern if he could visit her daughter in the nursing home while Newbern was at the appointment. Newbern agreed and permitted him to drive her vehicle to Maplewood. The petitioner left Newbern's home before noon, and Newbern went to her appointment. After the appointment, Newbern returned home, but the petitioner had not returned with her vehicle. Newbern became concerned and drove to Maplewood where she learned that the petitioner had not been there that day.

Newbern returned home and waited for the petitioner. The petitioner had not returned with the vehicle by 5:00 p.m., so Newbern called the police. The police came to Newbern's home, and she gave a report. The petitioner called Newbern while the police were there. During the conversation, Newbern instructed the petitioner to return her vehicle, and he replied, "I can't." The petitioner did not return the vehicle, which was worth about $3,500. Newbern specifically stated she had allowed the petitioner to drive the vehicle to visit her daughter, but she had not given him permission to keep the vehicle indefinitely. Newbern acknowledged that when the petitioner called on January 15, he told her that he was lost. She also acknowledged that when she gave the petitioner permission to drive the vehicle, she did not tell him what time to return it.

The petitioner gave a statement to police indicating that he had ridden with Hardison from Knoxville to Newbern's home in Jackson. Newbern invited them to stay with her, and the petitioner became acquainted with Newbern's daughter. On January 15, the petitioner asked Newbern if he could "borrow" her vehicle so he could visit her daughter at the nursing home. Newbern allowed him to take the vehicle, but he became lost on his way. He called Newbern's daughter, and she gave him directions. However, he again became lost and drove toward Knoxville. The petitioner maintained that he "'should not have went to Knoxville. I am wrong for that.'" State v. Billy Ray Riley, No. W2004-02016-CCA-R3-CD, 2005 WL 1768718, at **1-2 (Tenn. Crim. App. at Jackson, July 26, 2005), perm. to appeal denied, (Tenn. 2005). Based upon the foregoing proof, the jury found the petitioner guilty of theft of property valued over $1000 but less than $10,000, and the trial court sentenced the petitioner as a Range III persistent offender to twelve years.

Subsequently, the petitioner filed a petition for post-conviction relief, alleging that his trial counsel was ineffective by not thoroughly reviewing his file with him, by not convincing him to

-2-

testify at trial, and by having a conflict of interest regarding the case because her firm had previously represented Newbern in a bankruptcy case.[1]

At the post-conviction hearing, the petitioner's trial counsel testified that she was appointed to represent the petitioner after his other attorneys were removed from representation due to conflicts. When trial counsel began representing the petitioner, she was unaware that her firm had previously represented Newbern in a bankruptcy case. Counsel stated that she had not personally represented Newbern, but she subsequently saw Newbern's name on a "case file list." At that time, counsel informed the petitioner of her firm's prior representation of Newbern, and counsel asked the petitioner if the prior representation was problematic. At first, the petitioner did not know if it would be a problem. The issue was addressed in open court, and the petitioner said that the prior representation would not be a problem and counsel could continue to represent him. The petitioner never asked counsel to withdraw from representation.

Prior to trial, counsel filed a discovery motion and subsequently copied the State's entire case file. Counsel recalled that she returned two or three times as the investigation proceeded to ensure that she had copied all the information in the file. After counsel obtained the copies, she reviewed the discovery materials with the petitioner. Counsel recalled that she met with the petitioner approximately ten times.

Counsel recalled that the petitioner could not understand why he was being charged with a crime when he had Newbern's permission to take the vehicle. Counsel explained to the petitioner that the State's proof indicated that he had exceeded the scope of Newbern's permission. The petitioner believed that he was innocent of any crime and felt that any attorney who disagreed should not be representing him.

Counsel recalled that she argued to the jury that the petitioner had Newbern's permission to use the vehicle and that he had used the vehicle on numerous occasions. Additionally, the jury was instructed on the lesser-included offense of unauthorized use of a motor vehicle. Newbern admitted during trial that she had given the petitioner permission to use her vehicle, but she emphasized that she gave him permission to use the vehicle to go to the nursing home. Counsel stated, "I think I did get it effectively across that there was permission there." She explained that the trial never hinged upon whether Newbern gave permission to use the vehicle but centered upon whether the petitioner exceeded the scope of that permission.

Counsel stated that the petitioner did not provide the names or telephone numbers of anyone who could be a witness for him at trial. The petitioner told counsel that while he had Newbern's vehicle, he went to visit a sick uncle because it was an emergency. However, the petitioner never provided to counsel the uncle's name or contact information. Additionally, counsel stated that she could have called Hardison as a witness, but calling Hardison risked informing the jury that the

---

[1] The petitioner raised additional issues in the lower court; however, the three issues addressed are the only issues raised on appeal.

-3-

petitioner and Hardison had arrived at Newbern's residence in a stolen Jeep. Counsel wanted to keep the jury from learning that the Jeep had been stolen.

Counsel recalled that she repeatedly discussed with the petitioner whether he would testify at trial. Counsel and the petitioner discussed that the only two people who knew the arrangements about the vehicle were Newbern and the petitioner. Moreover, they also discussed that if the petitioner testified, the State would attempt to impeach his testimony with his extensive criminal history. The petitioner consistently said that he would testify. Prior to giving her opening statement, counsel verified that the petitioner would testify. Counsel said that she told the jury the petitioner would testify because the petitioner had assured her that he would. However, at the close of the State's proof the petitioner decided not to testify.

The petitioner testified on his own behalf at the post-conviction hearing. The petitioner recalled that two attorneys withdrew from representation prior to the appointment of trial counsel. The petitioner said that when counsel informed him that her firm had previously represented Newbern, he told her that he wanted a new attorney. When discussing the matter with the trial court, the trial court told the petitioner that if he did not accept the representation of trial counsel the petitioner would have to represent himself. At that point, the petitioner acquiesced to counsel's representation.

He said that counsel visited him only three times. He complained that she did not call his uncle to testify at trial. He asserted that his uncle would have testified that the petitioner called Newbern and tried to return the vehicle, but he did not have a way of getting it to her. The petitioner maintained that counsel did not issue a subpoena for his uncle, and she did not explain why she failed to issue a subpoena.

The petitioner complained that counsel did not show him until fifteen days prior to the sentencing hearing a victim impact statement written by Newbern. The petitioner maintained that in the statement, Newbern stated that she did not want to proceed with the case. The petitioner felt that counsel should have used the statement to get his case dismissed.

The petitioner stated that he did not understand how he committed theft when he had Newbern's permission to use the vehicle; he also did not understand what it meant to exceed the scope of Newbern's permission. The petitioner complained that counsel did not direct the jury's attention to unauthorized use of a vehicle. He contended that his defense was that he had not committed theft but had instead committed the unauthorized use of the vehicle.

At the conclusion of the post-conviction hearing, the post-conviction court found that there was no conflict of interest based upon counsel's firm previously representing Newbern on an unrelated matter. Regardless, the court noted that the petitioner did not assert how the alleged conflict prejudiced him. Moreover, the post-conviction court asserted that the petitioner did not present any proof to support his remaining allegations. The court found that counsel was not ineffective. The petitioner now appeals.

## II. Analysis

To be successful in his claim for post-conviction relief, the petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2006). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.2 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we afford the post-conviction court's findings of fact the weight of a jury verdict, with such findings being conclusive on appeal absent a showing that the evidence in the record preponderates against those findings. Id. at 578.

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). However, we will review the post-conviction court's conclusions of law purely de novo. Id.

"To establish ineffective assistance of counsel, the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)). In evaluating whether the petitioner has met this burden, this court must determine whether counsel's performance was within the range of competence required of attorneys in criminal cases. See Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Moreover,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697, 104 S. Ct. at 2069).

On appeal, the petitioner complains that his trial counsel was ineffective by not thoroughly reviewing his file with him, by not convincing him to testify at trial, and by having a conflict of interest because her firm had previously represented Newbern in a bankruptcy case. In its order denying the petition, the post-conviction court implicitly accredited the testimony of trial counsel. At the post-conviction hearing, trial counsel testified that she met with the petitioner at least ten times and reviewed all discovery documents with him. The petitioner does not allege anything that counsel should have revealed but did not nor does he allege what prejudice he suffered by this

alleged deficiency. Moreover, trial counsel asserted that the petitioner decided not to testify during trial; until then, the petitioner assured her that he would testify at trial. Counsel had informed the petitioner that only he and Newbern knew what happened between them regarding the vehicle. She also informed him that if he testified the State would attempt to impeach him with his extensive criminal history. The right to testify at trial is a fundamental right that may be waived only by the accused, and defense attorneys may not unilaterally deprive their clients of that right. Momon v. State, 18 S.W.3d 152, 161-62 (Tenn. 1999). In this case, however, the petitioner chose not to testify in his defense. Counsel was not deficient for honoring the wishes of the petitioner. Finally, counsel testified that she informed counsel of the potential conflict of interest, and the petitioner ultimately agreed that counsel could continue her representation. Like the trial court, we can discern no prejudice deriving from counsel's firm previously representing Newbern in a bankruptcy case. Accordingly, the petitioner has failed to meet his burden of showing that the record preponderates against the trial court's findings.

### III. Conclusion

Finding no error, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE